## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Jeffrey A Jordan                                                                      Plaintiff

v.                                    No. 4:14-CV–493-JLH-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                           Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Jeffrey A. Jordan seeks judicial review of the denial of his application for social security disability benefits.[3]  Jordan last worked as a truck driver for a plastics recycling company.[4]  He claims he has been disabled since in March 2011 when he stopped working after a workplace back injury.[5]  The record documents no workplace injury.

**The Commissioner's decision**.  After considering the application, the ALJ determined Jordan has severe impairments — lumbar degenerative disc disease status post fusion with radiculopathy, obesity, and depression with anxiety[6] — but he can do some sedentary work.[7]  Because a vocational expert identified available sedentary work,[8] the ALJ determined Jordan is not disabled and denied the application.

After the Appeals Council denied review,[9] the ALJ's decision became the

---

[3]SSA record at pp. 128 & 136 (applying for disability benefits on Aug. 8, 2011 and alleging disability beginning Mar. 21, 2011).  Agency records indicate Jordan also applied for disability benefits on Mar. 15, 1999 and alleged disability beginning Nov. 1, 1998.  *Id*. at p. 143.  That application was denied on July 28, 2000.  *Id*. at p. 154.

[4]*Id*. at pp. 157 & 167.

[5]*Id*. at p. 166.

[6]*Id*. at p. 14.

[7]*Id*. at p. 17.

[8]*Id*. at pp. 59-60.

[9]*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[10]  Jordan filed this case

to challenge the decision.[11]  In reviewing the decision, the court must determine

whether substantial evidence supports the decision and whether the ALJ made a legal

error.[12]  This recommendation explains why the court cannot determine whether

substantial evidence supports the decision and why this case should be remanded to the

Commissioner for further proceedings.

**Jordan's allegations**.  Jordan challenges the determination that he can do some

sedentary work.  He relies on the orthopedic examiner's opinion as proof he cannot

work.  The examiner reported that Jordan can sit for six hours per day and stand/walk

for up to one hour per day.[13]  According to Jordan, this opinion proves he is physically

unable to work on a full-time basis.  He maintains the ALJ should have given the

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]SSA record at p. 399.

examiner's opinion significant weight.  For these reasons, he maintains substantial evidence does not support the decision.[14]

**Applicable legal principles**.  The orthopedist's opinion is probative of Jordan's application because Jordan based disability on musculoskeletal impairment.  An orthopedist specializes in the musculoskeletal system.[15]  The Commissioner's regulations encourage the ALJ to give more weight to a specialist's opinion about medical issues related to the specialty than to a medical opinion outside the specialty.[16]  An ALJ, however, "may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole."[17]  The court must consider whether the orthopedic opinion is inconsistent with the record as a whole.

---

[14]Docket entry # 9.

[15]Stedman's Med. Dictionary 1383 (28th ed.) (defining an orthopedist as "[o]ne who practices orthopaedics").  *See id*. (defining orthopedics as "[t]he medical specialty concerned with the preservation, restoration, and development of form and function of the musculoskeletal system, extremities, spine, and associated structures by medical, surgical, and physical methods.").

[16]20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

[17]*Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

**The opinion is inconsistent with the record as a whole, but the ALJ's reasoning reflects a mistake requiring a remand**.  The orthopedist's opinion flowed from a post-hearing exam.[18]  The ALJ ordered the exam because Jordan had little treatment after back surgery.[19]  The examiner is a physician who often provides the Commissioner with medical opinions about a claimant's ability to work.  Considering the purpose of the exam,[20] the examiner's speciality, and the Commissioner's frequent reliance on the examiner, one might expect the ALJ to give the opinion significant weight, but the ALJ gave the opinion little weight, reasoning that there is no "objective medical evidence to support the[] limitations" and that the examiner relied "quite heavily" Jordan's subjective reported symptoms.[21]

---

[18]SSA record at pp. 401-02.

[19]Jordan underwent back surgery for what his neurosurgeon described as "a real small disc protrusion."  *Id*. at p. 253.  Although the neurosurgeon didn't recommend surgery, *id*., an orthopedic surgeon performed a minimally invasive spinal fusion after a discography identified the disc protrusion as the source of pain.  *Id*. at p. 277 (describing the disc protrusion as "a tiny herniation at L5-S1").  Jordan claims to have seen his surgeon twice after his surgery, but he reported no followup visits in his agency paperwork.  *See id*. at pp. 174 & 184.  The record doesn't not include the orthopedic surgeon's treatment notes.  The record includes only hospital records consisting of the surgeon's operative report and discharge summary.  *Id*. at pp. 275-81.  Much of the medical evidence flowed from periodic visits to primary care providers.

[20]*Id*. at p. 52 ("I'm going to send you out to an orthopedic specialist or a rehab specialist to evaluate and see just where we are with your condition.").

[21]*Id*. at p. 23.

Substantial evidence supports many aspects of the ALJ's reasoning because earlier medical findings are not as limiting as the orthopedist's medical findings. Treating medical providers consistently documented tenderness in the low back,[22] but no problems with function,[23] muscle strength, range of motion, or sensation.  In contrast, the orthopedic examiner documented problems in these areas.  The following chart illustrates the difference between a treating provider's medical findings and the orthopedic examiner's findings.

| emergency room visit three months before hearing | orthopedic exam two months & 23 days after hearing |
| --- | --- |
| "Neck exam included findings of normal range of motion, … no tenderness."[24] | "flexion is approximately 40°, extension is approximately 50°, rotation is approximately 60° right and left side, respectively, and lateral flexion is approximately 40° right and left side, respectively."[25] |
| "Back exam included findings of normal inspection, no tenderness."[26] | "flexion is no more than 70°, extension is approximately 0°, and lateral flexion is approximately 10 - 15° right and left side, respectively."[27] |

---

[22]*See id*. at p. 304 (Aug. 9, 2011), p. 302 (Sept. 12, 2011), p. 338 (Sept. 21, 2011), p. 326 (Oct. 26, 2011), p. 336 (Nov. 9, 2011) & p. 334 (Jan. 24, 2012).

[23]*But see id*. at p. 336 (abnormal gait on Nov. 9, 2011) & p. 334 (abnormal gait on Jan. 24, 2012).

[24]*Id*. at p. 362.

[25]*Id*. at p. 401.  *See also id*. at p. 400.

[26]*Id*. at p. 362.

[27]*Id*. at p. 401.

| | |
|---|---|
| "Upper extremity exam included findings of inspection normal, Range of motion normal, Motor strength normal." | "Strength in the upper extremity today is at 5/5.  Sensation is diminished in the right hand at the ring and small finger."[28] |
| "Lower extremity exam included findings of inspection normal, Range of motion normal, Motor strength normal."[29] | "Strength in the lower extremity today is at 5/5 on the left side and 4+/5 on the right side."[30] |
| "Gait normal."[31] | "he walks with a limp favoring his right leg.  He cannot squat and come to a full stance."[32] |

The differences may have flowed from Jordan's complaints — chest pain at the

emergency room versus musculoskeletal complaints during the orthopedic exam — but

the differences may have flowed from motivation and exaggeration.  Degenerative

changes in the spine likely cause back pain,[33] but it's reasonable to expect that at least

one of Jordan's several treating medical providers would have observed and

documented problems with range of motion, function, and sensation if Jordan has such

---

[28]*Id*. at p. 401.

[29]*Id*. at p. 362.

[30]*Id*. at p. 401.

[31]*Id*. at p. 362.

[32]*Id*. at p. 401.

[33]Nine months after back surgery, diagnostic imaging showed no disc protrusion. *Id*. at p. 386.  The imaging showed only degenerative changes in the form of disc desiccation; that is, dehydration of the spine's disc material.  Some people with disc desiccation experience few symptoms, but disc desiccation can cause back pain because it can reduce the flexibility and height of affected discs.

problems, especially considering that Jordan sought treatment for back pain.[34]  The lack

of negative medical findings by treating medical providers, the inconsistency in

Jordan's reports about the source of his back pain,[35] and the omission of treatment

records from the back surgeon, suggest Jordan exaggerated his symptoms during the

orthopedic exam.

Even though the orthopedic opinion is inconsistent with the record as a whole,

the ALJ's reasoning reflects a mistake.  The mistake is reflected in the following passage:

> In addition, there is nothing to show that the claimant is sensitive to
> chemicals, noise, humidity, dust/fumes or temperature extremes, as found
> by [the examiner].  There is no evidence of emergent care treatment or
> hospitalization related to [chronic obstructive pulmonary disease],
> emphysema or asthma.  The claimant does not take any medications for
> any of these conditions.  [The examiner] noted a past medical history of
> asthma but had no records or other information to rely upon other than
> the claimant's own statements.  There is no diagnosis of asthma in the
> records.[36]

This passage reflects criticism for reporting environmental limitations in the absence of

medical evidence of a respiratory impairment.[37]  Reporting environmental limitations in

---

[34]*See id*. at p. 304 (Aug. 9, 2011), p. 302 (Sept. 12, 2011), p. 338 (Sept. 21, 2011),
p. 326 (Oct. 26, 2011), p. 336 (Nov. 9, 2011) & p. 334 (Jan. 24, 2012).

[35]*Compare id*. at p. 38 (attributing back pain to falling at work) *with id*. at p. 252
(reporting several years of back pain without a significant triggering event).

[36]*Id*. at p. 23.

[37]*See id*. at p. 399 (marking chemicals, noise, humidity, dust/fumes or temperature
extremes as "N/A").

the absence of supporting medical evidence is a good reason for discounting a medical

opinion, but the orthopedic examiner reported no environmental limitations.  The ALJ

misread the report; the ALJ made a mistake.

Not every mistake provides a basis for relief, but the mistake in this case requires

a remand because the decision doesn't indicate the role unsupported environmental

limitations played in discounting the opinion.  Because unsupported environmental

limitations wasn't the only basis for discounting the opinion, the court cannot

determine whether substantial evidence supports the decision.  Doing so forces the

court to speculate about the role unsupported environmental limitations played in

weighing the opinion.  Because the court may not speculate, this case should be

remanded for reconsideration of the orthopedic examiner's opinion.

### Conclusion and Recommended Disposition

The undersigned magistrate judge recommends REMANDING this case to the

Commissioner, because the court cannot speculate about the role the mistake played in

weighing the opinion.  Only the ALJ can reconcile the mistake.  If the district judge

decides to remand this case, the remand order should include the following

instructions:

> This case is remanded to the Commissioner because the ALJ's
> consideration of the orthopedic examiner's medical opinion reflects a
> mistake.  The ALJ criticized the orthopedic examiner for reporting
> unsupported environmental limitations, but in actuality, the orthopedic

examiner reported no environmental limitations.  The ALJ did not indicate what role the environmental limitations played in weighing the opinion, so the court cannot determine whether substantial evidence supports the ALJ's decision.

On remand, the ALJ shall reconsider the orthopedic examiner's opinion and assign appropriate weight.  Once the ALJ reconsiders the opinion, the ALJ shall reassess Jordan's residual functional capacity and determine whether work exists that Jordan can do.  The ALJ may exercise discretion in determining whether to obtain updated medical evidence and whether to order a second orthopedic exam.

A remand could have been avoided if Jordan's attorney had alerted the Appeals Council to the ALJ's mistake, but the attorney did not mention the mistake to the Appeals Council[38] or to this court on judicial review.  If the attorney moves for attorney fees, it would be appropriate for the attorney to address the omission in his application.

Dated this 23rd day of April, 2015.

_____
United States Magistrate Judge

---

[38]*Id* at pp. 226-27 (attorney brief asking Appeals Council to review the ALJ's decision) & docket entry # 9 (attorney brief for judicial review).